# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. James B. Clark, III |
| v. | : | Mag. No. 15-3185 |
| ALISA ADLER | : | **CRIMINAL COMPLAINT** |

I, Matt Hewlett, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

*[signature]*
Matt Hewlett, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
June 24, 2015 at Newark, New Jersey

HONORABLE JAMES B. CLARK, III
UNITED STATES MAGISTRATE JUDGE

*[signature]*
Signature of Judicial Officer

## ATTACHMENT A

### Count One
### (Wire Fraud)

On or about the dates set forth below, in the District of New Jersey and elsewhere, defendant

### ALISA ADLER

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud and to obtain money and property from victim investors by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice to defraud, did knowingly and intentionally transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, specifically that referenced below:

| Approximate Date | Description |
| --- | --- |
| September 3, 2010 | Wire transmission from New Jersey initiating a wire transfer of $175,000 from an HSBC account controlled by Victim to an attorney escrow account held at J.P. Morgan Chase in New York. |

In violation of Title 18, United States Code, Section 1343 and Section 2.

1

## ATTACHMENT B

I, Matt Hewlett, am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have conducted an investigation and discussed this matter with other law enforcement officers who have participated in this investigation, and have knowledge of the following facts. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts which I believe are necessary to establish probable cause. Unless specifically indicated, all dates described in this affidavit are approximate, and all conversations and statements described in this affidavit are related in substance and in part.

### Overview

1. At various times relevant to this Complaint:

   a. Defendant Alisa Adler ("ADLER"), was a resident of New York, New York and presented herself as a real estate investment professional;

   b. Defendant ADLER was the President and owner of ASG Real Estate Services Group Inc. ("ASG"), a New York corporation and ADLER's supposed real estate investment business; and

   c. Defendant ADLER, through ASG, purported to operate ASG, through which she claimed to purchase, sell, rent, and invest in real estate for profit.

2. From at least in or around January 2009 through at least in or around December 2011, defendant ADLER took money from multiple victim investors in the form of loans and investments, and told the victim investors that their money would be invested in real estate ventures through ASG. However, the majority of ASG funds were not used for real estate investments during this time. Defendant ADLER instead perpetrated a Ponzi scheme with her victim investors' money: she used new investor money (1) to fund principal and interest payments to existing investors, and (2) to pay for her own personal expenses.

### The Scheme to Defraud

3. Defendant ADLER solicited victim investors to invest their money in ASG. Defendant ADLER told victim investors, both orally and in writing, that their money would be used to fund ASG's purchase and development of real estate projects.

2

4.   To induce potential victim investors to give her money, defendant ADLER provided victim investors with promotional materials and other documents.

5.   In most instances, defendant ADLER provided victim investors with promissory notes or memoranda of understanding that reflected the amount of their investment and provisions for repayment, often including a schedule for the payment of interest and the return of victim investors' principal after a set period of time.

6.   In some instances, defendant ADLER represented to victim investors that their investment funds would be maintained in an attorney escrow account.

7.   Based on defendant ADLER's representations, investors sent defendant ADLER money, either directly or through an attorney escrow account, which was deposited into ASG's bank account, or, on occasion, into other accounts controlled by defendant ADLER.

**Materially False and Misleading Statements**

8.   Defendant ADLER made numerous materially false and misleading statements to investors concerning ASG's use of victim investors' monies, including, but not limited to, that: (1) their money was being invested in a specific real estate property; and (2) their money would be repaid within a certain amount of time.

9.   Contrary to what defendant ADLER told her victim investors, the investigation has revealed that defendant ADLER did not use most of the victim investors' money to fund ASG's real estate business. Indeed, bank records and witnesses reveal that during the relevant time period defendant ADLER and ASG had no substantial income-generating operations.

**Misappropriation of Investor Funds**

10.   Instead of using victim investor money to fund real estate investment projects, defendant ADLER used new victim investor money to make principal and interest payments to prior investors.

11.   Furthermore, during the scheme, defendant ADLER misappropriated victim investors' money for her personal use. Among other things, defendant ADLER used a portion of investor monies to fund her day-to-day expenses, including household bills, transportation costs, meals, and

entertainment.

### An Example of the Scheme to Defraud: the Kerhonkson Property

12. In or around May 2010, defendant ADLER solicited a victim ("Victim 1") to invest in ASG. Defendant ADLER told Victim 1 that Victim 1's money would be used to fund a real estate acquisition in or around Kerhonkson, New York.

13. Based on defendant ADLER's representations, and at defendant ADLER's direction, from in or around May 2010 through in or around September of 2010, Victim 1 sent approximately $500,000 to a bank account held in the name of an attorney affiliated with ASG (the "Attorney Account") in three separate payments. In one such payment, on or about September 3, 2010, Victim 1 wired approximately $175,000 from Victim 1's bank account to the Attorney Account.

14. On or about January 6, 2011, defendant ADLER executed a written Memorandum of Understanding between Victim and ASG, which memorialized the agreement between defendant ADLER and Victim 1: that is, that ASG agreed to use Victim 1's approximately $500,000 for the purpose of acquiring a real estate property in or around Kerhonkson, New York, and pay 10% interest annually to Victim, among other things.

15. On or about January 13 and January 28, 2011, the entire $500,000 was transferred from the Attorney Account to an ASG bank account controlled by defendant ADLER.

16. Contrary to her representations to Victim 1, defendant ADLER did not use Victim 1's $500,000 to purchase property in Kerhonkson. Instead, defendant ADLER used most of Victim 1's $500,000 (1) to make principal and interest payments to other, prior, victim investors of defendant ADLER, and (2) to pay defendant ADLER's personal expenses, including bills, transportation expenses, and meals.

17. Defendant ADLER has lied to Victim 1 on several occasions since 2011, falsely telling Victim 1 that approximately $375,000 of Victim 1's investment was diverted to a separate real estate acquisition in Massachusetts and $125,000 was being used in an effort to acquire the Kerhonkson, New York property.

4